```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
THIAGO FAGUNDES, JOAO M. DE SOUZA, DECIO   :
GARRIDO, and CLOVIS PEREIRA FILHO on behalf :
of themselves and all others similarly situated, :
                                            :       MEMORANDUM AND ORDER
                Plaintiffs,                 :       12-CV-1634(DLI)(SMG)
                                            :
        -against-                           :
                                            :
THOMAS LANE, CHRIS GUY, BLAISE TONEATTO,    :
and MOSAIC, TERRAZZO AND CHEMICAL           :
PRODUCT DECORATIVE FINISHER MASONS          :
WORKERS ASSOCIATION LOCAL NO. 7 OF NEW      :
YORK NEW JERSEY & VICINITY of the           :
INTERNATIONAL UNION OF BRICKLAYERS and      :
allied CRAFTWORKERS (BAC),                  :
                                            :
                Defendants.                 :
----------------------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiffs Thiago Fagundes, Joao M. De Souza, Decio Garrido, and Clovis Pereira Filho filed the instant action against Defendants Thomas Lane, Chris Guy, Blaise Toneatto, and Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York New Jersey & Vicinity of the International Union of Bricklayers and allied Craftworkers (BAC) ("Local 7" or "the Union") seeking damages for an alleged breach of collective bargaining agreements ("CBAs"), a third-party beneficiary claim for the alleged failure to pay union-scale wages and benefits and overtime wages, an alleged breach of the duty of fair representation, and a prima facie tort claim. Local 7 moves to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem."), Dkt. Entry No. 9.) Defendants contend that: (1) Local 7 fulfilled its duty of fair

representation to Plaintiffs by processing and pursuing their claim for back pay; (2) Plaintiffs have failed to exhaust the grievance procedures under the governing CBA; and (3) Plaintiffs have failed to allege facts sufficient to state a claim.  For the reasons set forth more fully below, the motion is denied in part and granted in part.

## BACKGROUND[1]

Plaintiffs were employed by Centron Installations, Inc., Centron Coatings, Inc., Centron Enterprises LLC, and Fine Painting Co., Inc. (collectively, "Centron") as tradesmen and floor installers for various periods from January 2008 to August 2010. (Compl. ¶¶ 17-20.)  Centron entered into two CBAs with Local 7, the first spanning from July 1, 2006 to June 30, 2009 and the second from July 1, 2009 to June 30, 2013.  (Compl. ¶ 23.)  Plaintiffs worked on projects for which Centron subcontracted with other companies that either had entered into CBAs with Local 7 or whose projects contractually required union labor.  (Compl. ¶ 24.)

In January 2008, Defendant Toneatto visited a public works project in Manhattan where Plaintiffs were working, and told Plaintiffs that they would become members of Local 7.  (Compl. ¶ 29.)  He informed Plaintiffs that he would bring applications for Local 7, and that Plaintiffs would be covered for back pay at union rates.  (*Id.*)  In April 2008, Plaintiffs Garrido and De Souza asked Toneatto about the applications, and he informed them Local 7 was "working on it."  (Compl. ¶ 31.)  Toneatto supplied the applications to Plaintiffs at the Greene Street project in New Jersey in May 2008. (Compl. ¶ 32.)  Plaintiffs visited Local 7 in August 2008 to ask why they had not received their union cards yet, and informed the individual Defendants that they had not

---

[1] The facts, as detailed in the Complaint, are assumed true only for purposes of this Memorandum and Order.

2

been paid union-scale wages. (Compl. ¶ 33.) Defendants (unspecified in the Complaint) told Plaintiffs that they were processing the applications for membership, and to await further notice. (*Id.*)

Plaintiffs again visited Local 7 to discuss union membership in September 2008; a few days after that meeting, they received union cards and authorization for benefits. (Compl. ¶ 34.) From September 2008 to November 2009, and again in January 2010, Plaintiffs repeatedly contacted Local 7 to inform them that they were still being paid non-union wages, and provided copies of their pay stubs to the individual Defendants. (Compl. ¶¶ 36-38.) Defendants claimed that they were investigating the issue, and told Plaintiffs they would be in touch when an audit had been completed. (Compl. ¶ 39.)

On July 6, 2010, Plaintiffs initiated a putative class action against Centron in the United States District Court for the District of New Jersey (the "New Jersey Action") for failure to pay proper wages. (Compl. ¶ 42.) The parties to the New Jersey Action commenced settlement discussions on February 23, 2011, and scheduled a settlement conference for May 23, 2011. (Compl. ¶¶ 45, 48.) On May 19, 2011, Local 7 filed a grievance and arbitration action against Centron for failure to pay union-scale wages amounting to $33,050.07 and scheduled a hearing for May 25, 2011. (Compl. ¶ 50.) During the May 23, 2011 conference, Centron's counsel stated that Plaintiffs could not pursue their claims due to Local 7's arbitration action, and noted that the value in the Local 7 grievance was significantly lower than the sum sought by Plaintiffs in the New Jersey Action. (Compl. ¶ 52.) On May 25, 2011, Plaintiffs asked Local 7 to recalculate their damages, which allegedly only included unpaid wages starting from May 2008, and requested that Local 7 adjourn the grievance proceedings. (Compl. ¶¶ 53-54.)

On October 7, 2011, the Joint Trade Board of the Terrazzo Industry ("JTB") issued a Decision and Award in the Local 7 - Centron arbitration for $33,050.78 on behalf of the named Plaintiffs. (Compl. ¶ 57, Ex. 1.) Plaintiffs claim that at the subsequent settlement conference for the New Jersey Action, they "were forced to compromise . . . . for sums substantially lower than what they were actually owed by the Centron Companies." (Compl. ¶ 59.) Plaintiffs further allege that it was "futile" to pursue their claims through Local 7, as Local 7 breached its duty of fair representation by failing to investigate the unpaid wage claims for three years, "refusing to adjourn the grievance process and then finally settling Plaintiffs' claims for ridiculously low amounts." (*Id.* ¶ 60.)

Plaintiffs filed the instant action on April 3, 2012. Plaintiffs refer to the action as representing a class under Federal Rule of Civil Procedure 23(a)(1), but have not yet moved to certify a class. (Compl. ¶¶ 66-72.) Because Plaintiffs have not moved to certify a class and neither party has presented any arguments concerning the merits of class certification, the Court will not address that issue at this time. *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."); Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues or defenses, and must appoint class counsel under Rule 23(g)."). Presently, Defendants' motion to dismiss is before this Court.

**DISCUSSION**

**I.      Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F. 3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court set forth the requirement that a plaintiff plead enough facts to "state a claim to relief that is plausible on its face." 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). To be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

Additionally, in deciding a motion to dismiss, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007). A document "upon which [the complaint] solely relies and which is integral to the complaint" may be considered by the court even if it is not attached to or referenced in

5

the complacent. *Id.* at 590 (citing *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F. 2d 42, 47 (2d Cir. 1991)). Accordingly, the Court will consider the relevant CBAs between Centron and Local 7 where appropriate for the resolution of this motion.

## II. Claims Against Individual Defendants

Plaintiffs concede that the claims against the individual union management members should be dismissed pursuant to 29 U.S.C. § 185(b).[2] (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Complaint ("Pls.' Opp. Mem."), Dkt. Entry No. 13 at 15.) Based on these statements, as well as the case law applying 29 U.S.C. § 185(b), *see, e.g.*, *Coureau v. Granfield*, 2013 WL 1831889, at *6 n.2 (E.D.N.Y. Apr. 26, 2013) (citing *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F. 3d 782, 784 (2d Cir. 1999)), all four counts against the individual Defendants are dismissed with prejudice.[3]

## III. Claims Against Union Defendant

### A. Preempted Claims

Plaintiffs' breach of CBA and third-party beneficiary claim, Counts One and Two of the Complaint, are preempted by federal law. Plaintiffs allege that Centron was "required, under the [CBAs] entered into with Local 7, to pay their employees . . . a wage that was specified in these Agreements." (Compl. ¶ 83.) Plaintiffs assert that they were the "intended beneficiaries" of those CBAs, and bring several related claims against

---

[2] While this concession was made in a subsection titled, "Plaintiffs Concede That the Claim for Breach of the Duty of Fair Representation Against the Individual Defendants Should Be Dismissed," the substance of the concession refers to "claims" generally and entirely disregards Defendant Toneatto's lack of personal jurisdiction grounds as moot. (Pls. Opp. Mem. at 15-16.)

[3] As the claims against the each of the individual Defendants, including Defendant Toneatto, are dismissed, the Court need not address Defendant Toneatto's assertions regarding improper service and lack of personal jurisdiction.

6

Local 7 for Centron's failure to pay union wages. (Compl. ¶¶ 74, 84.) The first and second claims are based on state common law. Each of these claims is based on allegations closely intertwined with the CBAs as they rely on the existence and interpretation of the CBAs. As noted in *Allis-Chalmers Corp. v. Lueck*, such state claims must be brought under section 301 or resolved under federal labor law. 471 U.S. 202, 210 (1985) (holding that a state claim "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law"); *see also Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962); *Vera v. Saks & Co.*, 335 F. 3d 109, 114 (2d Cir. 2003). While state law "claims that 'are truly independent of a CBA are enforceable,' the LMRA will preclude such claims that are 'inextricably intertwined' with the terms of a CBA." *Johnson v. D.M. Rothman Co., Inc.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) (citing *Dougherty v. Am. Tel. & Tel. Co.*, 902 F. 2d 201, 203-04 (2d Cir. 1990)). Therefore, Counts One and Two of the Complaint are dismissed as preempted. Plaintiffs' allegations of Union misconduct must be brought solely as a claim for a breach of the duty of fair representation.

### B. Duty of Fair Representation

#### 1. Statute of Limitations

The Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 158(b), imposes a duty of fair representation on unions. The statute of limitations for this type of claim, originally derived from NLRA § 10(b), is six months from the time that the cause of action accrued, *i.e.*, the time that the Plaintiff reasonably should have known that the Union had breached its duty. *See Johnson v. D.M. Rothman Co., Inc.*, 861 F. Supp. 2d

326, 335 (S.D.N.Y. 2012) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170–71 (1983)); *Pilchman v. Am. Fed'n of State, Cnty. & Mun. Emp'r, AFL-CIO*, 2011 WL 4526455, at *5 (S.D.N.Y. Sept. 29, 2011); *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 708 (S.D.N.Y. 2006*).* Though most case law invoking the statute of limitations involves hybrid section 301/duty of fair representation claims, the Second Circuit has held that it also applies to breach of the duty of fair representation claims standing alone. *Eatz v. DME Unit of Local Union Number 3 of Int'l Bhd. of Elec. Workers, AFL-CIO*, 794 F. 2d 29, 33 (2d Cir. 1986). Accrual occurs on the date when the plaintiff knew or reasonably should have known of the breach. *See Demchik v. Gen. Motors Corp.*, 821 F. 2d 102, 105 (2d Cir. 1987); *Minella v. Evergreens Cemetery*, 2006 WL 2506561, at *4 (E.D.N.Y. Aug. 29, 2006).

Plaintiffs' fair representation claims can be divided into three component stages: (1) January 2008 to September 2008, during which time repeated inquiries concerning formal induction into the union were seemingly ignored; (2) September 2008 to January 2010, the period in which Plaintiffs allege they repeatedly complained to the Union about Centron's non-payment of union wages to no avail; and (3) May 2011 to October 2011, when the Union pursued a grievance claim against Centron in a manner that Plaintiffs describe as "arbitrary . . . capricious . . . and discriminat[ory]." (Compl. ¶ 60.) The Complaint openly states, "[h]aving begun to suspect some time in the Spring of 2010 that Defendants were not conducting a good faith investigation of their claims . . . [on] or about July 6, 2010, Plaintiffs brought a putative class action against the Centron Companies." (Compl. ¶ 42.) Plaintiffs could have filed a hybrid section 301/duty of fair representation claim including Local 7 at this time, but failed to do so, instead they

simply filed a section 301 action against Centron. Because Plaintiffs state in the Complaint that they had notice of the first two stages of the breach of the duty of fair representation before July 6, 2010 (Compl. ¶ 42), but did not file the instant action until April 3, 2012, their claims for breach stemming from conduct before the arbitration action are time barred.

The Second Circuit has found that where the claim involves a union's conduct in arbitration proceedings, accrual does not occur until a decision is rendered. *Ghartey v. St. John's Queens Hosp.*, 869 F. 2d 160, 164 (2d Cir. 1989). To base accrual on an earlier act during the union's representation would be premature, as the effectiveness of the representation cannot be measured before the outcome is realized. *Id.* at 163. The JTB issued its Consent Award on October 7, 2011; Plaintiffs filed the instant action less than six months later, on April 3, 2012. Plaintiffs' allegations concerning conduct during the arbitration process are timely, and previous incidents during that process pointing to breach remain relevant insofar as they "shed light on the true character of matters occurring within the limitations period." *Eatz*, 794 F. 2d at 34 (quoting *Local Lodge 1464 v. NLRB*, 362 U.S. 411, 416 (1960) (footnote omitted)). The motion to dismiss the claim for breach of the duty of fair representation is granted concerning Local 7's conduct up until the arbitration action with Centron.

### 2. *Breach of Duty*

Breach of the duty of fair representation occurs "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). While bad faith claims for other causes of action often require heightened pleading, "there is no heightened pleading standard for a

breach of the duty of fair representation." *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 549 (E.D.N.Y. 2011); *see also Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F. 3d 120, 126 (2d Cir.1998) ("[b]ad faith encompasses fraud, dishonesty, and other intentionally misleading conduct" and requires proof that the union acted with "an improper intent, purpose, or motive"). Negligence or error is not sufficient to constitute breach, though the duty of fair representation does entail "fair and prompt consideration" of the member's claims. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F. 3d 1148, 1153-54 (2d Cir. 1994) (quotation omitted). In keeping with the judiciary's deferential posture regarding union decisions, arbitrariness is found only where, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F. 3d 174, 179 (2d Cir. 2001) (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998)). In response to a motion to dismiss, a plaintiff at this stage need not prove her grievance was meritorious, but that the union's failure to handle the grievance was "not a tactical decision but rather an arbitrary omission" that may have involved a disregard of the plaintiff's rights. *Thomas*, 793 F. Supp. 2d at 549 (quoting *Passante v. N.Y. State Nurses Ass'n*, 2010 WL 2425953, at *3 (N.D.N.Y. June 11, 2010)).

Though Plaintiffs reiterate the charge of discriminatory representation, they do not allege facts sufficient to support the characterization of their treatment by Local 7

during arbitration as compromised either in favor of another group within the union, or based on hostility towards any identifiable traits among the Plaintiffs. *Pilchman*, 2011 WL 4526455, at *7 (noting "[a] union's conduct is discriminatory when the union 'without a legitimate purpose, takes action favoring some of its members at the expense of others'" (quoting *Ramey v. Dist. 141*, 378 F. 3d 269, 277 (2d Cir. 2004))). Discriminatory behavior has been found in cases where, for example, white union members denied membership to black employees who were members of the same craft, and negotiated terms with employers that explicitly restricted the employment prospects of those black employees. *See Bhd. of R.R. Trainmen v. Howard*, 343 U.S. 768 (1952); *see also Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 201 (1944). The Complaint is void of any factual claims that support an allegation of discrimination. However, the allegations of improper Union conduct invoke the arbitrariness and bad faith standards.

Plaintiffs' first argument for breach of duty during the arbitral process concerns the Union's reluctance to pursue the grievance in a timely manner. Local 7 did not file a grievance against Centron to recover Plaintiffs' unpaid wages until May 19, 2011. (Compl. ¶ 50). Plaintiffs reiterate that they "had reason to believe that Defendants were . . . being paid off by the owner of the Centron Companies" to avoid pursuing the claims for unpaid wages, but present no factual allegations to advance this claim beyond the level of pure speculation. (Pls.' Opp. Mem. at 4.) However, the unexplained years-long passage of time between Plaintiffs' filing of the grievance and the Union's formal pursuit of their claims could point to an arbitrary breach of the duty to investigate. While a union has "a duty to perform some minimal investigation," only "an egregious disregard" of that duty is considered a breach. *Thomas*, 793 F. Supp. 2d at 548 (holding

there was breach because the union failed to perform any investigation at all) (internal citations omitted). Courts afford "wide discretion" to a union in its timing in performing the investigation. *Id.* at 548. While in the instant case the Union did eventually complete the investigation and arbitration processes on behalf of Plaintiffs, it did not initiate them until almost a year after the Plaintiffs had separately filed suit in federal court in July 2010. (Compl. ¶ 42.) Had Plaintiffs filed this suit against the Union at that time, they may have prevailed under *Thomas*, but since they filed this suit after the Union obtained an arbitration award on their behalf, the question of whether the representation during the arbitration was ineffective to the point of breach rests on an evaluation of the outcome of the grievance procedure.

A union's decisions when pursuing a grievance may be found unreasonable where they have "seriously undermined the arbitral process." *Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 596 (S.D.N.Y. 2006) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003), *abrogated on other grounds by Vance v. Ball State University*, 2013 WL 3155228 (2013)). "[S]erious undermin[ing]" is a high threshold, and union members do not have the final say over the union's decisions regarding whether and how to process meritorious claims. A member does not have an absolute right to have the union process her grievance, and "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F. 3d 1148, 1153- 54 (2d Cir. 1994). In *Tucker*, the court emphasized "the onerous standards of irrationality, unlawfulness or deceit

necessary to support a determination that the Union's actions here were arbitrary, discriminatory or taken in bad faith." 451 F. Supp. 2d at 596.

Plaintiffs allege that Defendants purposefully maintained the grievance action in order to sabotage their FLSA case in New Jersey against Centron, as the Union "actively interfer[ed] with Plaintiffs' efforts to recover their unpaid wages, despite Plaintiffs' express requests that the union adjourn the grievance proceedings because they were hurting Plaintiffs' chance of recovery." (Pls.' Opp. Mem. at 1.) Plaintiffs claim that they "were forced to settle . . . in the New Jersey action for a greatly reduced sum," because Centron "took the position that the Plaintiffs' remedy for their . . . claims was the grievance process by Local 7." (*Id.* at 6.) Any lack of success in the New Jersey Action cannot be attributed to the separate existence of the Local 7 arbitration claim.[4] Specifically, Plaintiffs consented to the settlement, and have not alleged fraud or duress that otherwise would call into question their freely determined choice to do so.

Plaintiffs' final argument for breach of the duty of fair representation during arbitration is that when Local 7 finally filed a claim against Centron, the Union calculated the damages for Plaintiffs' unpaid back wages so as to exclude unpaid union-scale wages prior to May 2008, the month in which Plaintiffs submitted their union applications. (Comp. ¶ 53.) Plaintiffs allege that Defendant Toneatto "determined that [Plaintiffs] should be members of Local 7" in January 2008, and that upon receipt of applications for membership, they would receive back pay for unpaid union-scale wages. (*Id.* ¶ 29.) This implies that regardless of the date on which the Plaintiffs formally submitted their

---

[4] Regardless of Centron's position, FLSA rights are independent of contractual rights, and cannot be abridged or waived. *Barentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 745 (1981). The Supreme Court has held that "prior submission of . . . grievances to the contractual dispute-resolution procedures" does not bar employees from bringing suit in federal court under the FLSA. *Id.*

applications, they qualified for union benefits at least by January 2008, months before the May 2008 calculation date that Defendants allegedly used for the back pay claim in arbitration. Reviewing the allegations in the light most favorable to the non-moving party, Plaintiffs' claims regarding the calculation can be construed as plausibly alleging a breach of the duty of fair representation based on arbitrariness or bad faith.

In addition to establishing that the Union's actions were arbitrary, in bad faith, or discriminatory, Plaintiffs must also allege causation. *Spellacy*, 156 F. 3d at 130; *White*, 237 F. 3d at 179. Plaintiffs assert that due to the breach, the willful and intentional miscalculation of damages caused Plaintiffs to receive less than they were entitled to based on Centron's wrongful payment practices. (Compl. ¶¶ 53-54, 56, 92.) While Plaintiffs' allegations that they were "forced" to settle for less in the New Jersey Action are unpersuasive, throughout the Complaint there are allegations regarding Defendants' conscious decision not to properly pursue the amounts owed to Plaintiffs. However, because Plaintiffs did not contest the calculation through the CBA grievance procedure before bringing suit in this Court, Local 7's failure to exhaust defense must be considered.

### 3. Failure to Exhaust

Local 7 contends that Plaintiffs should have exhausted their contractual remedies and filed a grievance pursuant to its Constitution and By-laws concerning the Union's conduct during the Centron arbitration before filing an action in this Court. (Defs.' Mem. at 22.) Plaintiffs request to be excused from exhaustion, asserting that "[a]ny effort to pursue internal union procedures would have met with the same resistance as demonstrated by the effort to pursue a grievance against the employer," the procedures "would not have resulted in Plaintiffs' recovering their wages," and the union procedures

would have been "time-consuming and fruitless." (Pls.' Opp. Mem. at 21.) While the third allegation mirrors the *Clayton* undue delay exception, Plaintiffs' discussion of timing states that "informal efforts to put a stop to the grievance arbitration had no effect, and there is no suggestion that following the formal procedures would have stopped it either." (*Id.*) Defendants do not argue that Plaintiffs should have attempted to exhaust their contractual remedies specifically during the arbitration, just at some point before filing the instant action. Because the burden on an exhaustion defense is on the Defendant, and Plaintiffs' claims allege a relevant history of unresponsive/dilatory Union conduct, the Court will proceed with its analysis.

Federal labor policy generally requires that Plaintiffs utilize CBA grievance procedures before bringing a suit in court. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965); *Vaca*, 386 U.S. at 184; *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130 (2d Cir. 2005). However, in *Clayton v. International Union, UAW*, the Supreme Court noted that claims based on the duty of fair representation "rais[e] interests extending far beyond internal union interests," and are not subject to as much judicial discretion as purely internal union affairs. 451 U.S. 679, 688 (1981). Therefore, the federal labor policy favoring resolution of disputes through CBA grievance procedures does not necessarily apply to internal union procedures, as the Court declined "to impose a universal exhaustion requirement." *Id*. at 689. Exhaustion is required "only where the internal union appeals procedures can either grant the aggrieved employee full relief or reactivate his grievance," as under those conditions there is "a reasonable possibility that the employee's claim will be privately resolved." *Id.* at 686.

15

Under *Clayton*, a plaintiff may bring an action without exhausting the contractual grievance procedure if any of the following three factors exist:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689 (1981). The defense bears the burden of establishing that its procedures can offer the plaintiff redress for his injuries. *Johnson v. GM,* 641 F. 2d 1075, 1079-80 (2d. Cir. 1981).

Under the first *Clayton* factor, a plaintiff may be excused from exhaustion where the defendant fails to demonstrate that union officials were not hostile to the employee to the extent that a fair hearing on the claim could not be held. 451 U.S. at 689. Defendants claim that "Plaintiffs already obtained a fair hearing before the [JTB] and there are no allegations of hostility towards Plaintiffs." (Defs.' Mem. at 23.) Because Plaintiffs allege bad faith conduct on the part of the Defendants throughout the Complaint, and the fact that the instant claim is essentially premised on a refutation of the characterization of the Centron arbitration as a "fair hearing," Defendants' statement is insufficient on its own.

However, courts within the Second Circuit have held that, even where there are allegations of hostility, if union procedure "provides for an appeals process that is removed from whatever hostility there may be," then exhaustion will not be excused under the second *Clayton* factor. *Williams v. United Auto Workers Local 501, AFL-CIO*, 841 F. Supp. 499, 503 (W.D.N.Y. 1993); *Skolnik v. Am. Guild of Musical Artists*, 2001

16

WL 849447, at *3 (S.D.N.Y. July 27, 2001) (pursuit of grievance procedure not futile where members could appeal to "a wholly distinct and neutral decision maker . . . for fair and impartial consideration").

While Local 7 claims its internal grievance procedure allows a member to "appeal from an adverse trial decision of Local 7 through intermediary appeals culminating in a final determination by the International Union," (Defs.' Mem. at 23), Defendants do not disclose whether the grievance procedure enables union members to pursue claims past the local level on their own if local officers refuse to do so, a concern present in this case due to the allegations of misconduct by Local 7 in bringing the Centron arbitration. While a member "may file a charge against the Union and/or its officers within thirty days of the alleged incident," Local 7 rules permit the advancement of claims on a discretionary rather than mandatory basis, with a trial afforded if "the charge is determined to be substantial." (*Id.*) Appeals require prior decisions from which to appeal, and a local refusal to advance a grievance past filing could prevent union members from having a decision to appeal to upper-level management in order to overcome hostility. Defendants do not assert any time limitations for the assessment of filed grievances that would give Plaintiffs adequate notice to file suit in federal court if an attempt to exhaust was undermined by the potential hostility of local officials. Defendants' cursory summary of Union grievance procedures is inadequate to meet its burden on the hostility question, and determination of this issue seems inappropriate at this stage of the case.

The third *Clayton* factor excuses exhaustion where it would produce unreasonable delay in the plaintiff's pursuit of his claims in a judicial forum. 451 U.S. at 689. On this point, Defendants offer one sentence: "Plaintiffs herein already received two hearings on

the merits of their claims and seek a third through this action." (Defs.' Mem. at 23.) The Court interprets the "two hearings" to mean the 2011 arbitration and the New Jersey Action against Centron, as they are the only other actions mentioned in the record. Both of those cases dealt with unpaid wage claims against *Centron*. The instant action is a duty of fair representation claim brought against *Local 7*. The merits and issues of the instant action are not the same as those of the prior actions. The Court finds that such an assertion does not adequately address the possibility of unreasonable delay. Additionally, it is plausible that the Union again would delay the proceedings, as Plaintiffs allege the Union did prior to the last federal action that was initiated in New Jersey. Therefore, it is not appropriate to dismiss the claim at this point in the case on this ground.

Plaintiffs plausibly allege that Local 7 breached its duty of fair representation insofar as they have sufficiently pled facts to show that the Union may have acted in bad faith by miscalculating Plaintiffs' claim for back pay in the Centron arbitration, despite being made aware of the miscalculation (Compl. ¶ 53), which resulted in the award of an inadequate settlement. The motion to dismiss is denied for Local 7's conduct during the 2011 arbitration action.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is denied in part and granted in part. The motion to dismiss is GRANTED with respect to all of the claims against the individual Defendants. The motion to dismiss is GRANTED with respect to Counts One and Two against the Union. The motion to dismiss is DENIED with respect to Count Three of the Complaint for the breach of the duty of fair representation claim against the Union for conduct that occurred during the 2011 arbitration action, but GRANTED for

Plaintiffs' breach of the duty of fair representation claims for alleged violations prior to the arbitration action.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2014

                                              /s/
                                  DORA L. IRIZARRY
                              United States District Judge